UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

UNITED STATES LIABILITY INSURANCE
COMPANY, a foreign company,

    Plaintiff,

v.

KELLEY VENTURES, LLC, a Florida
corporation, KEVIN P. KELLEY, a Florida
resident, and PHOENIX MOTORS, INC., a
foreign company,

    Defendants.

CASE NO. 14-CV-62840-JIC

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, UNITED STATES LIABILITY INSURANCE COMPANY ("USLI"), by and through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Southern District of Florida Local Rule 56.1(a), hereby files this Motion for Summary Judgment and Incorporated Memorandum of Law and states:[1]

**INTRODUCTION**

The issue before the Court in this matter is whether a Director's and Officer's Liability insurance policy should be rescinded because of the policyholder's material misrepresentation on the policy's application, as well as whether the policy actually provides coverage for the alleged wrongful act. The answer to the first question is unquestionably yes, and the answer to the second question is undeniably no.

---

[1] USLI's Statement of Material Facts in Support of Motion for Summary Judgment is separately filed in accordance with S.D. Fla. L.R. 56.1 at [D.E. 36].

On November 2, 2012, Kelley Ventures, LLC ("Kelley Ventures") was formed as a Florida Limited Liability Company. Kelley Ventures has two members, Kelley Automotive, Inc. ("Kelley Auto"), and Phoenix Motors, Inc. ("Phoenix"), each of which owns a fifty percent share of Kelley Ventures. The principal of Kelley Auto is Gail Kelley, and the principal of Phoenix is Kevin Kelley.[2] Kevin Kelley is also the manager of Kelley Ventures.

On October 1, 2013, Kevin Kelley notified Gail Kelley that Kelley Auto would have to pay off an account receivable of $216,641.48 before it would be entitled to a cash distribution from the profits of Kelley Ventures. This resulted in no cash distribution being made to Kelley Auto, while Phoenix allegedly received distributions in excess of $175,000.00. On or about October 17, 2013, Kelley Auto sent a letter to Kelley Ventures objecting to the account receivable proposed by Kevin Kelley as fictitious and formally requested its share of the distributions of profits. The letter stated that "in the event [Kelley Ventures] decides to move forward and make distributions to Phoenix Motors, Inc. without an equal check being distributed to Kelley Automotive, Inc., this is justification for filing suit," and continued by listing the claims Kelley Auto would be bringing against Kelley Ventures.

Kevin Kelley, as the manager of Kelley Ventures, denied the request. On or about October 24, 2013, Kelley Auto made a second demand for distributions, stating, "Demand is hereby made that the payments due to Kelley Automotive, Inc. in the amount of $70,564.16 be

---

[2] Gail Kelley and Kevin Kelley are not related.

- 2 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

made immediately."³ Finally, on November 22, 2013, Kelley Auto sent another letter to Kelley and Kelley Ventures, inquiring again as to whether Kelley Ventures would be making the cash distribution to Kelley Auto, stating that Kelley Auto did "not want to engage in a controversy", but that "we believe Phoenix Motors is looking for an edge." Kelley Ventures refused to budge.

By December 2013, Kevin Kelley and Kelley Ventures were fully aware of the allegedly fictitious account receivable and had been engaged in a dispute with Kelley Auto for nearly three months. Equipped with this knowledge, Kevin Kelley determined that it was in his own and Kelley Ventures' best interests to purchase a Corporate Directors and Officers Liability policy, and he completed an application for such with USLI on December 23, 2013 (the "Application").

Question 17 of the Application specifically asked: "Is any entity or person proposed for this insurance aware of any fact, circumstance or situation which may result in a claim against the Applicant or any of its Directors, Officers or Employees?" Kelley responded "no" to this question. However, it is undisputed that, at the time of the Application, Kevin Kelley was "aware of a fact, circumstance or situation which may result in a claim against the Applicant or any of its Directors, Officers or Employees," namely, the continuing disagreement with Kelley Auto as to the application of distributions to the disputed debt over which Kelley Auto had previously

---

³ This amount represents a settlement request, and does not reflect the amount in controversy for jurisdictional purposes, and the Defendants have admitted that the amount in controversy requirement for federal jurisdiction is met. *See* Ans. & Aff. Def. [D.E. 13]. The letter goes on to state that "As previously stated, we can take a position that far more is owed to Kelley Automotive." The underlying amended complaint alleges "KELLEY VENTURES is indebted to KELLEY AUTO in an amount equal to the value of its transferred asserts over liabilities a sum believed to be in excess of $1,000,000.00, for 50% of profits wrongfully withheld." [D.E. 36-2]. In any case, as this action seeks rescission of the entire Policy, the appropriate measure of the amount in controversy is the face value of the Policy, which is $1,000,000.00. *See Evanston Ins. Co. v. Sun West Acquisition Corp.*, No. 8:13-cv-2893-T-33TGW, 2014 WL 988764, at *6 (M.D. Fla. Mar. 13, 2014).

- 3 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

informed Kevin Kelley that it would file suit. Unaware of Kelley Ventures' continuing dispute with Kelley Auto, USLI issued the Policy on January 15, 2014.

On or about March 5, 2014, Kelley Auto reiterated its demand for distributions and advised that it would file suit if Kelley Ventures did not comply. Kelley Auto enclosed a draft complaint to that effect. Kelley Auto then contacted the accountant for Kelley Ventures, Miguel Rodriguez, and advised that it believed various sections of the report were false, misleading, and not in compliance with Generally Accepted Accounting Principles ("GAAP"). Miguel Rodriguez agreed with the issues raised by Kelley Auto, after his review of additional documents which had not been provided by Kevin Kelley, and immediately withdrew the report. In response, Kevin Kelley sought a new accountant who would produce a similar report. Kevin Kelley produced a new report on September 25, 2014; however, this report stated that it is not in compliance with GAAP because the accountants did not review all information. Finally, after approximately a year of threatening suit, Kelley Auto filed a lawsuit on October 9, 2014. USLI was put on notice shortly thereafter.

Accordingly, USLI respectfully requests that this Court grant rescission of the Policy on account of Kelley's material misrepresentation on the Application. However, even if the Court determines that the Policy is not void *ab initio*, the Court should nevertheless enter an order declaring that USLI has no duty to defend or indemnify Kelley or Kelley Ventures on account of the Full Prior Acts Coverage Provision, the pending or prior litigation exclusion, and the Percentage Shareholder Exclusion Endorsement.[4]

---

[4] USLI does not intend to waive its reliance on Exclusions B, C, F, or K, and continues to assert their potential applicability to this action. However, USLI concedes that there are material facts with respect to those exclusions at this time which would preclude entry of summary judgment.

- 4 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

**MEMORANDUM OF LAW**

USLI is entitled to summary judgment on the basis of the plain, unambiguous meaning and legal effect of the Policy, which excludes Kelley Auto's claim against Kelley and Kelley Ventures from coverage. In particular, coverage is excluded under the Full Prior Acts Coverage Provision, the pending or prior litigation exclusion, and the percentage shareholder exclusion. Furthermore, USLI is entitled to summary judgment on its claim for rescission because there is no dispute that Mr. Kelley made a material misrepresentation as to the existence of pending claims against Kelley Ventures at the time the D&O policy application was executed.

**I.       Standard for Motion for Summary Judgment**

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). As to materiality, the substantive law will identify which facts are material, and factual disputes that are irrelevant or unnecessary will not be counted. *Id.* at 248. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

**II.      Principles of Insurance Contract Interpretation**

A liability policy imposes two duties on the insurer, a duty to defend and a duty to indemnify. The duty to indemnify is fairly straightforward, and is generally defined by the

- 5 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

individual policy. The duty to defend under an insurance contract, on the other hand, is broader than and separate from the duty to indemnify. *Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995) (applying Florida law). As a result, a duty to defend can exist even in situations where there is no duty to indemnify. *See Colony Ins. Co. v. G & E Tires & Serv. Inc.*, 777 So. 2d 1034, 1036-37 (Fla. 1st DCA 2000). With respect to determining the duty to defend, Florida follows the so-called "eight corners rule." *Colony Ins. Co. v. Barnes*, 410 F. Supp. 2d 1137, 1139 (N.D. Fla. 2005) (citing *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977)); *see also Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 F. App'x 861, 864-65 (11th Cir. 2014). The "eight corners" refer to the four corners of the complaint and the four corners of the insurance policy. *Barnes*, 410 F. Supp. 2d at 1139. Thus, when the complaint alleges facts that fairly and potentially bring the suit within coverage, the duty to defend exists. *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005). "The duty is determined solely by the allegations against the insured, not by the actual facts, nor the insured's version of the facts." *Id.* (quoting *Irvine v. Prudential Prop. & Cas. Ins. Co.*, 630 So. 2d 579, 579-80 (Fla. 3d DCA 1993)). Any doubts regarding the duty to defend must be resolved in favor of the insured. *Jones*, 908 So. 2d at 443. However, where the insurer has no duty to defend, it necessarily has no duty to indemnify. *Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1332 (S.D. Fla. 2006) (citing *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 421 (Fla. 3d DCA 1995)).

Nonetheless, Florida courts and federal courts applying Florida law have provided exceptions to the "eight corners rule." In particular, if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggesting the existence of evidence establishing coverage, the carrier is relieved of defending.

- 6 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

*Composite Structures*, 560 F. App'x at 865 (citing *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101, 1103 (Fla. 4th DCA 1995)). In particular, insurers are allowed to consider the date of notice to the insurance company when determining its duty to defend, because the date of notice is not a fact that would normally be alleged in a complaint. *Composite Structures*, 560 F. App'x at 866 (citing *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 10 n.2 (Fla. 2004)).

Courts have also recognized that the eight corners rule does not apply when an insurer chooses to defend, as defending a claim under a reservation of rights is not the same as denying coverage. *See U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 630 F. Supp. 2d 1332, 1337 (M.D. Fla. 2007). An insurer thus has three options available when it has a perceived valid defense to coverage against third-party claims made against its insured. *Steadfast Ins. Co. v. Sheridan Children's Healthcare Servs., Inc.*, 34 F. Supp. 2d 1364, 1366 (S.D. Fla. 1998). First, it may investigate the claim under a reservation of rights and then withdraw its defenses and deny coverage if its investigation reflects a good faith basis for doing so. *Id.* (citing *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 661 So. 2d 1218, 1220 (Fla. 3d DCA 1995)). Second, an insurance carrier may institute a declaratory action to establish non-coverage while defending under a reservation of rights. *Sheridan*, 34 F. Supp. 2d at 1366 (citing *Travelers Ins. Co. v. Emery*, 579 So. 2d 798, 800 (Fla. 1st DCA 1991). Third, an insurance carrier may settle the underlying cause of action, thereby waiving any defenses to coverage which it otherwise might have asserted. *Sheridan*, 34 F. Supp. 2d at 1366 (citing *Emp'rs Mut. Liab. Ins. Co. v. Sears, Roebuck & Co.*, 621 F.2d 746, 748 (5th Cir. 1980)[5].

---

[5] Fifth Circuit opinions issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206 (11th Cir. 1981).

- 7 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

Finally, where the language of the policy is plain and unambiguous, "there is no need for judicial construction and the contract must be enforced as written." *Fla. Power & Light Co. v. Penn Am. Ins. Co.*, 654 So. 2d 276, 278 (Fla. 4th DCA 1995) (citing *Great Global Assurance Co. v. Shoemaker*, 599 So. 2d 1036 (Fla. 4th DCA 1992)). If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written. *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 441 (Fla. 2013); *Siegle v. Progressive Consumers Ins. Co.*, 788 So. 2d 355, 359 (Fla. 4th DCA 2001); *Perez v. Michigan Mut. Ins. Co*., 723 So. 2d 849, 851 (Fla. 3d DCA 1998).

At all times material to this action, USLI has diligently defended Kevin Kelley and Kelley Ventures under a reservation of rights. Having fully investigated the facts, it is abundantly clear that there is no coverage under the Policy for the allegations contained in the Underlying Complaint. USLI sought a declaratory action to establish non-coverage while defending under a reservation of rights, and having completed its investigation, respectfully requests that it be allowed to deny coverage and withdraw its defense.

**III.   The Policy Should Be Rescinded Because Kevin Kelley Made a Material Misstatement on the Policy's Application By Stating that He Was Not Aware of Circumstances Constituting a Claim, Despite Having at Least Three Letters from Kelley Auto Threatening Suit Against Kelley Ventures.**

Florida statute provides the basis for the rescission of an insurance policy. § 627.409(1)(b), Fla. Stat., provides that a misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under a contract:

> "If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract

- 8 -

in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss."

Florida law interpreting this statute is clear. A material misstatement, even if the applicant could not have known of its inadequacy, provides a basis for rescission, so long as it affects the risk undertaken by the insurer. *Fabric v. Provident Life & Accident Ins. Co.*, 115 F.3d 908, 913 (11th Cir. 1997) (citing *Old S. Life Ins. Co. v. Kirby*, 522 So. 2d 424, 426 (Fla. 5th DCA 1988)). Of course, it is true that the parties may modify this standard by language in the application, such as by indicating the applicant's answers are "full, true and complete to the best of my knowledge and belief." *Mims v. Old Line Life Ins. Co. of Am.*, 46 F. Supp. 2d 1251, 1255 (M.D. Fla. 1999). Nevertheless, an applicant's "belief" is to be credited only to the extent that it is not clearly contradicted by the factual knowledge on which it is based. *Id.* at 1255-56 (citing *Carter v. United of Omaha Life Ins.*, 685 So. 2d 2, 6 (Fla. 1st DCA 1996)).

### A.     Kelley Made a Misstatement on the Policy Application.

There is no reasonable dispute that Mr. Kelley made a misstatement on the Application. Question 17 of the Application asked, "Is any person or entity proposed for this insurance aware of any fact, circumstance or situation which may result in a claim against the Applicant or any of its Directors, Officers, or Employees?" *See* Application, [D.E. 1-4]. Mr. Kelley checked the box labeled "No." *Id.* At the time the Application was executed on December 23, 2013, Mr. Kelley was, indisputably, aware of a "fact, circumstance or situation" which may—and did—result in a claim against the Insured. He possessed three letters from Kelley Auto—dated October 17, 2013, October 24, 2013, and November 22, 2013, each of which independently and in conjunction demonstrated Kelley Auto's intent to file suit if Kelley Ventures did not make a distribution to Kelley Auto.

- 9 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

Mr. Kelley has stated that although he was aware of the disagreement at the time of the application, he did not make a misrepresentation or fail to disclose the pending claim because Kelley Auto's position was "so absurd that in Management's mind it would have been inconceivable that Kelley Auto would ever actually file such a frivolous claim." Ans. & Aff. Def. ¶ 24. [D.E. 13]. Notwithstanding the fact that Question 17 does not ask the applicant to evaluate the merits of the claim, the so-called "absurdity" of the claim is no defense to rescission. This is true even where, as here, the applicant only represents that "to the best of his/her knowledge and belief the particulars and statements set forth herein are true". The mere fact that the "knowledge and belief" language is present does not shield an insured's answers from review. *See Carter*, 685 So. 2d at 6.

The Eleventh Circuit has laid out the appropriate limits for which an insured's reasonable belief should be given weight:

> "[T]he twin qualifiers [knowledge and belief] require[ ] that knowledge not defy belief.... What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, ***but only so far as that belief is not clearly contradicted by the factual knowledge on which it is based***. In any event, a court may properly find a statement false as a matter of law, however sincerely it may be believed. To conclude otherwise would be to place insurance companies at the mercy of those capable of the most invincible self-deception—persons who having witnessed the Apollo landing still believe the moon is made of cheese."

*Hauser v. Life Gen. Sec. Ins. Co.*, 56 F.3d 1330, 1335 (11th Cir. 1995) (emphasis added). No reasonable person could interpret the correspondence between Kelley Auto and Kelley Ventures as not being a claim in need of disclosure. It is an undisputed fact that Kelley Ventures received a letter from Kelley Auto's attorney informing it that, "In the event your client decides to move forward and make distributions to Phoenix Motors, Inc. without an equal check being distributed

- 10 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

to Kelley Automotive, Inc., this is justification for filing suit." *See* October 17, 2013, Letter [D.E. 1-2].

Thus, the fact that Kelley Ventures did not believe that this claim was meritorious is belied by the fact that *it was still aware of the claim*. Kelley Ventures' belief is clearly contradicted by the factual knowledge on which it was based. Kevin Kelley's belief that somehow the statement "If this matter is not resolved, claims will include, but not be limited to the following" does not qualify as a "fact, circumstance or situation which may result in a claim" stretches the bounds of believability to its limits. A court may properly find a statement false as a matter of law, no matter how sincerely it is believed. *Hauser*, 56 F.3d at 1335. Kelley falsely represented that he was not aware of "of any fact, circumstance or situation which may result in a claim against the Applicant or any of its Directors, Officers or Employees," despite the fact that on December 23, 2013, he possessed a series of no fewer than three letters from Kelley Auto threatening suit, and despite the fact that since Kelley Ventures' initial notice of no distribution, Kevin Kelley and Gail Kelley had not spoken about the matter without an attorney present. Gail Kelley Dep. 31:7-15, June 2, 2015 [D.E. 33-1]. In *Hauser*, the court determined that there was a question of fact as to whether the insured knew that she was experiencing chronic kidney failure, which manifested itself less than a month after the policy became effective. *Hauser*, 56 F.3d at 1332, 1335. Here, there is no question of fact. Mr. Kelley possessed multiple letters threatening suit from Kelley Auto, all received less than three months before preparing the Application. The optimism in believing there would be no suit was admirable, but ultimately amounts to, as the Eleventh Circuit stated, witnessing the Apollo landing and still believing the moon is made of cheese.

- 11 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

### B. Kelley's Misstatement on the Application Was Material to the Risk Undertaken by USLI.

A statement is material if it affects the risk undertaken by the insurer. *See Mims*, 46 F. Supp. 2d at 1256; *see also* § 627.409(1)(b), Fla. Stat. Here, there is no dispute that the misstatement comprising the answer to Question 17 was material. In the paragraph above the signature line on the Application, the Application reads, "The undersigned…agrees that those particulars and statements are material to the acceptance of the risk assumed by the Company." *See* Application [D.E. 1-4]. Furthermore, an affidavit of the policy's underwriter, Tim Bickers, plainly states that the policy would not have been issued, or would not have been issued at the same premium, had USLI been made aware of the pending claim at the time of the Application. [D.E. 28-1].

Although generally, such "Monday morning quarterbacking" is disfavored, *see Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.3d 559, 567 (11th Cir. 1990), Kelley's misrepresentation so affects the insurer's assessment of risk that the misrepresentation is material as a matter of law. *Mims*, 46 F. Supp. 2d at 1261; *Kieser v. Old Line Life Ins. Co. of Am.*, 712 So. 2d 1261 (Fla. 1st DCA 1998); *de Guerrero v. John Hancock Mut. Life Ins. Co.*, 522 So. 2d 1032 (Fla. 3d DCA 1988). The purpose of D&O policies is to protect the individual directors and officers of a corporation from the risk of lawsuits. *In re CHS Elecs., Inc.*, 261 B.R. 538, 542 (Bankr. S.D. Fla. 2001) (citing *In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999)); *see also Waste Corp. of Am., Inc. v. Genesis Ins. Co.*, 382 F. Supp. 2d 1349, 1354 (S.D. Fla. 2005) (holding that liability policies do not insure against certainties). Thus, it is of critical importance that a D&O carrier be aware of any pending claims, as there can be no insurance against certainty. *See Interstate Fire & Cas. Co. v. Abernathy*, 93 So. 3d 352, 359 (Fla. 1st DCA

- 12 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

2012) ("The concept of insurance is that the parties, in effect, wager against the occurrence or non-occurrence of a specified event; the carrier insures against a risk, not a certainty.").

Question 17 of the application, cognizant of the *raison d'être* for D&O policies, specifically asks whether "any entity or person proposed for this insurance [is] aware of any fact, circumstance or situation which may result in a claim against the Applicant or any of its Directors, Officers or Employees[.]" This is because, to the extent the insured was aware of such circumstances, USLI was not insuring against a *risk*, it was insuring against *certainty*. Accordingly, there is no question that Mr. Kelley's misstatement, whether intentional or not, was material as a matter of law, and USLI is entitled to rescission of the Policy.

IV. **Even If the Court Does Not Grant USLI Rescission of the Policy, There Is Nevertheless No Coverage For the Claims Asserted in the Underlying Lawsuit Pursuant to the Full Prior Acts Coverage Provision Because Kevin Kelley Had Knowledge of this Claim, Which Arose Out of a Wrongful Act, Prior to the Inception Date of the Policy.**

The Full Prior Acts Coverage Provision states that "coverage shall not apply to any **Claim** based upon or arising out of any **Wrongful Act** or circumstance likely to give rise to a **Claim** of which the person or persons signing the **Application** had knowledge, or otherwise had a reasonable basis to anticipate might result in a **Claim**, prior to the earlier of…the inception date of this Policy." As in the rescission count, there is no question that, prior to signing the D&O policy application on December 23, 2013, Kevin Kelley had knowledge of circumstances likely to give rise to a Claim. As before, Kevin Kelley's belief that such a claim was meritless or not forthcoming, even if honest, should be given no weight by this court; to do so in the face of overwhelming factual evidence would be as the Eleventh Circuit so artfully described, placing insurance companies at the mercy of "persons who having witnessed the Apollo landing still believe the moon is made of cheese." *See Hauser*, 56 F.3d at 1335.

- 13 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

**V.     Even If The Court Does Not Grant USLI Rescission of the Policy, There Is Nevertheless No Coverage For the Claims Asserted in the Underlying Lawsuit Pursuant to Exclusion L (The Pending or Prior Litigation Exclusion) Because Kevin Kelley Had Written Notice of the Pending Claim Prior to the Inception Date of the Policy.**

As previously stated, Exclusion L of the Policy excludes from coverage, in relevant part, "Any pending or prior…claim [or] demand…of which an **Insured** had written notice before the inception date of this Policy." Notably, unlike the Application, which qualifies the Insured's requirement to disclose prior acts according to its "knowledge and belief", Exclusion L does not contain a qualifier. Indeed, this exclusion does not even consider the knowledge of the Insured. Rather, it simply asks whether the Insured had written notice of a demand before the inception date of the policy. It is undisputed that Mr. Kelley was aware of this demand at the time the Application was executed. Indeed, Mr. Kelley brought the three demand letters to his deposition.

The October 17th letter plainly states that "in the event [Kelley Ventures] decides to move forward and make distributions to Phoenix Motors, Inc. without an equal check being distributed to Kelley Automotive, Inc., *this is justification for filing suit*." *See* October 17, 2013, Letter [D.E. 1-2] (emphasis added). On October 24th, 2013, Kelley Auto again made a demand for distributions: "***Demand is hereby made*** that the payments due to Kelley Automotive, Inc. in the amount of $70,564.16 be made immediately." *See* [D.E. 34-2] (emphasis added). This letter *expressly* used the term "demand".

At Mr. Kelley's deposition, the following exchange occurred:

> Q.     At the time that you signed the application, were you aware of [the October 17 letter]? Of this letter?
>
> A.     Was I aware that the letter existed, yes. Was I aware of that letter, yes.
>
> Q.     And you had read this letter?

- 14 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

   A. Yes.

Kevin Kelley Dep. 53:9-15 [D.E. 34-1].

  As previously mentioned, where the language of the policy is plain and unambiguous, "there is no need for judicial construction and the contract must be enforced as written." *Fla. Power & Light Co.*, 654 So. 2d at 278. An unambiguous contract of insurance does not require judicial construction and must be given effect as written. *See Trinidad*, 121 So. 3d at 441. There is no ambiguity in the policy language. The exclusion does not contemplate room for interpretation or evaluation of a claim by the insured. It simply asks whether a document exists and whether that document is in the insured's possession. It is undisputed that Kelley had written notice of the claims against Kelley Ventures; the documents existed and were in the insured's possession. Therefore, there can be no coverage under Exclusion L.

**VI.** **Even If The Court Does Not Grant USLI Rescission of the Policy, There Is Nevertheless No Coverage For the Claims Asserted in the Underlying Lawsuit Pursuant to the Percentage Shareholder Exclusion Endorsement Because Kelley Auto Is a Fifty Percent Shareholder in Kelley Ventures.**

  The Percentage Shareholder Exclusion Endorsement provides simply that: "The Company shall not be liable to make payment for Loss in connection with any Claim made against any Insured that is brought, maintained or asserted by or on behalf of any person or entity which owns or did own directly or beneficially more than 10% of the Organization's voting securities." In short, this Policy was not designed to insulate the Insured or the Insured's officers and directors from claims brought by large shareholders—exactly the type of shareholder that is the plaintiff in the lawsuit underlying this matter.

  It is undisputed that Kelley Automotive, the plaintiff in the underlying suit, is a 50% shareholder of Kelley Ventures, the Insured and a defendant in the underlying suit. *See* Kevin

- 15 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394 • (954) 377-8100

Kelley Dep. 21:20-24 [D.E. 34-1] (Q. "Okay. And if you look the last page of that document on page 28, does it indicate that Kelley Automotive has a 50 percent interest in Kelley Ventures, LLC?" A. "Yes.").

The 50 percent interest that Kelley Auto holds is not merely a formality. The LLC Agreement provides in section 7.7 that "the affirmative vote of Members holding more than 50% of the Percentage Interests represented at the meeting shall be the act of the Members, unless the vote of a greater or lesser proportion or number is otherwise required by the Act, or by this Operating Agreement." In other words, although the Manager (in this case, Kevin Kelley) handles the day-to-day operation of the business, Kelley Ventures' members (i.e., Kelley Auto and Phoenix) may vote at meetings "for any purpose or purposes." *See* LLC Agreement § 7.1 [D.E. 1-1].

Accordingly, because Kelley Auto directly owned more than 10% of Kelley Ventures' voting securities, the underlying action is expressly not covered by the Policy. Accordingly, having completed its investigation, USLI should be permitted to deny coverage and withdraw its defense on the basis of the Percentage Shareholders Exclusion.

### VII.   Conclusion

Kevin Kelley's and Kelley Ventures' actions in late 2013 demonstrate precisely the reasons insurance companies must zealously protect themselves against the gross information asymmetry that exists between insureds and insurers. Kevin Kelley knew that he and Kelley Ventures would be sued if he continued to refuse to make distributions to Kelley Auto. When Kelley signed the Application on December 23, 2013, only a select few people knew that a lawsuit was looming—Gail Kelley, attorneys for Kelley Auto and Kelley Ventures, and Kevin Kelley himself. USLI was entirely reliant on Kevin Kelley's honest answers to the questions on

- 16 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

the Application; it was only with full information that USLI could determine whether it wanted to underwrite the risks covered by the policy.

But there was no "risk" to insure against. By December 23, 2013, the threat of litigation was no longer a risk, it was a certainty. On December 23, 2013, Kevin Kelley possessed no fewer than three letters from Kelley Auto demanding a cash distribution, and threatening suit for noncompliance. Insurance is designed to protect against risks, not certainties. *Abernathy*, 93 So. 3d at 359. Kevin Kelley made a misrepresentation on the Application that materially affected the "risk" USLI was underwriting. Kevin Kelley's beliefs regarding the merits or likelihood of the threatened suit are so outside the boundaries of reality that this Court should afford them no weight. Justice demands that the Policy be rescinded, and USLI respectfully requests this Court to enter judgment accordingly.

However, even if the Policy is not rescinded, there are nonetheless three Policy provisions and exclusions that exclude coverage – the Full Prior Acts Coverage Provision, the Pending or Prior Litigation Exclusion, and the Percentage Shareholder Exclusion. As for rescission, there is no question that, prior to signing the D&O policy application on December 23, 2013, Kevin Kelley had knowledge of circumstances likely to give rise to a Claim. It is undisputed that at the time of the Application, Mr. Kelley had written notice of the claims against Kelley Ventures; the documents existed and were in the insured's possession. Finally, it is undisputed that Kelley Auto is a more than 10% shareholder in Kelley Ventures. This exclusion is absolute.

WHEREFORE, United States Liability Insurance Company respectfully requests that this Court enter summary judgment in favor of USLI and rescind the Policy it issued to Kelley

- 17 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

Ventures, or in the alternative, declare that there is no coverage. USLI further requests any additional relief that this Court deems appropriate under the circumstances.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2015, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Avery A. Dial<br>Avery A. Dial

Respectfully submitted,

/s/ Avery A. Dial
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Avery A. Dial
Fla. Bar No. 732036
Email: adial@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:   (954) 377-8100
Facsimile:    (954) 377-8101

- 18 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

CASE NO. 14-CV-62840-JIC

- 19 -

# SERVICE LIST

CASE NO. 14-CV-62840-JIC

M. Glenn Curran, III, Esq.
Curran Law Group
Coastal Tower, Suite 208
2400 East Commercial Blvd.
Fort Lauderdale, FL 33308
E-Mail: MGC-1@CurranLaw.com;
mary@CurranLaw.com
Telephone: (954) 938-9922
Facsimile: (954) 938-9923
Attorney for KELLEY VENTURES, LLC
d/b/a KELLEY COLLISION CENTER and
KEVIN P. KELLEY

4846-6987-9331, v. 1

- 19 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100